(No. 3657—▮▮▮▮▮▮▮▮▮▮▮▮

CONRAD ARNDT, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed May 12, 1943.*

ARTHUR A. MAINA, for claimant.

GEORGE F. BARRETT, Attorney General; GLENN A. TREVOR, Assistant Attorney General, for respondent.

434

CHIEF JUSTICE DAMRON delivered the opinion of the court:

This complaint was filed on the 5th day of November, 1941, and the record was not completed until the 6th day of May, 1943.

The complaint in this case states that Conrad Arndt was employed by the State of Illinois as a State investigator assigned to the Department of Conservation. That on the 19th day of November, 1940, while in the performance of his duties, it became necessary to take into custody and place under arrest two men who were engaged in violating certain laws of the State of Illinois, the enforcement of which particular laws is ordinarily assigned to the Department of Conservation, and while engaged in said arrest, he kept his revolver in an alert position and in attempting to remove his gun from its holster his gun became discharged and a bullet therefrom entered the left hand of claimant in the base of the left thumb and emerged and passed completely through said hand in the region of the base of the little finger.

The complaint further states that respondent through the Department of Finance, with the approval of the Department of Conservation, paid the following sums to the following persons for services rendered the claimant in attempting to cure the wound on his left hand:

To Dr. Mercer T. Brown of Zion, Illinois for first aid treatment in
the sum of.................................................... $17.00
St. Theresa Hospital, Waukegan, Illinois.......................... 21.95
Dr. B. J. Limery of Waukegan, Illinois........................... 87.00
    For medical and hospital treatment furnished the claimant.

The record in this case is very scant. It consists of the complaint, testimony of the claimant and Dr. B. D. Limery who treated the claimant, and his report, report of Dr. Sumner L. Koch, of Chicago, dated April 11, 1943, waiver on behalf of the claimant and the Attorney General of filing brief, statement and argument.

The evidence shows that this claimant was employed by the Department of Conservation on October 17, 1940, and was

assigned to a small area for patrolling in Lake County, Illinois; that on the 19th day of November, in company with a friend, he drove into his territory and about nine miles north from his south boundary line he encountered three men who apparently were hunting. He stopped and inquired if they had a hunting license. When informed by them that they had the required license and in attempting to get out of his automobile for the purpose of examining same, a pistol which he was carrying was accidentally discharged, the bullet striking his left hand entered the radial side of the volar surface just proximal to the wrist and emerged from the ulnar margin of said hand approximately one inch distal to the wrist.

He went immediately to the St. Theresa Hospital, Waukegan, Illinois, and was given first aid treatment by Dr. Mercer T. Brown, of Zion, Illinois. He then returned to his home and placed himself under the care of Dr. B. D. Limery of Waukegan, Illinois, who continued treatment of claimant for a period of about four months. This claimant apparently never returned to work for the Department of Conservation from the time of his injury to the filing of this complaint.

This claimant asks an award for 90% permanent loss of the use of his left hand.

Dr. Limery testified that it took about five weeks before the wound ceased to drain and the crusts came off. This doctor at the time he testified had no office records with him but was depending upon his recollection. Claimant asks an award for fifteen weeks temporary total disability.

This claimant was examined by Dr. Sumner L. Koch, of Chicago, in behalf of the respondent. His report is dated April 11, 1943. He stated "In my judgment, this patient has sustained an injury of the median nerve partly as a result of the original injury, but more particularly because of the compression by scar tissue which developed subsequent to the injury. In my judgment, the condition could be relieved completely by exposing the nerve and freeing it from the scar tissue which lies over it and helps to hold it fixed. That the nerve has not been completely divided is evidenced by the lack of wasting of the thenar muscles; by the fact that these muscles function in a normal fashion; and, third by the fact that the loss of sensation is by no means complete, for the condition is one of diminished sensation."

This report further states "The subcutaneous nodule in the palm has probably nothing to do with the original in-

jury. At all events, there is no basis for believing that Dupuytren's contraction can result from an injury such as this patient sustained. Such nodules develop spontaneously in many individuals; we do not know why. Although the patient with such a condition invariably connects it with some previous injury, in more than half of the cases on record, the condition is bilateral, and the patient rarely has any explanation for the involvement of the hand last affected. Furthermore, although a nodule such as characteristically forms in early cases of Dupuytren's contraction is present in this patient's palm, there is no reason to believe that the condition will go on to a contracture.''

And the report further states ''What this patient needs at this time is encouragement, physical therapy, and careful surgical exposure of the median nerve at the level of the wrist, which will permit removal of the scar tissue which is compressing it and causing the disturbance of sensation.''

Dr. Limery in his testimony places the functional loss of the use of claimant's hand at 80%. He further stated ''None of the tendons were severed, that I could determine. The blood vessels were severed. The tissues covering the tendons were injured. And all of the tissues, of course, were destroyed in the path of the bullet; all the tissues excepting it seemed to miss the bones and the tendons. It went on the palmar side, from the tendons, see. The tendons lay closer to the bone, and it went on the outside of the tendons, between the tendon and evidently the palmar fascia or tendenous tissue in the palm of the hand.''

Further testifying, this witness was asked the following questions:

''Q. After you started treatment was Mr. Arndt ever able to flex his fingers and thumb so as to form a fist?''

''A. Oh, yes.''

''Q. And he has been able to do that up to the present time?''

''A. He doesn't make a perfect fist, like that. He gets his fingers down pretty close, though. He can make a partial fist, sure he can.''

Upon consideration of the facts in the record we find as follows:

That on the 19th day of November, 1940, claimant and respondent were operating under the provisions of the Work-

men's Compensation Act of the State of Illinois; that on said date claimant sustained accidental injuries which arose out of and in the course of his employment; that notice of the accident was given to said respondent and claim for compensation on account thereof was made within the time required by the provisions of such Act; that claimant's annual earnings within the records as used in the Workmen's Compensation Act were $1,200.00; that his average weekly wage was $23.07; that claimant at the time of the accident was thirty-four years of age and unmarried and had no children dependent upon him for support; that necessary first aid, medical, surgical and hospital services were provided by respondent as follows:

Dr. Mercer T. Brown for first aid treatment........................ $17.00
St. Theresa Hospital, Waukegan, Illinois........................... 21.95
Dr. B. D. Limery, Waukegan, Illinois............................... 87.00

That claimant was temporarily totally disabled from the date of his injury as aforesaid for six full weeks; that he suffered 25% permanent loss of use of his left hand.

We further find that claimant is entitled to have and receive from the respondent the sum of $12.68 per week for six weeks for temporary total disability in accordance with the provisions of Paragraph B, Section 8 of the Workmen's Compensation Act, and the further sum of $12.68 per week for a period of forty-two and a half weeks for the permanent loss of 25% of the use of his left hand in accordance with the provisions of Paragraph E-12 of Section 8 of such Act.

We further find that all of the compensation due to claimant as aforesaid has accrued at this time.

An award is therefore entered in favor of the claimant, Conrad Arndt, for the sum of $614.98, all of which has accrued and is payable forthwith.

This award being subject to the provisions of an Act entitled, "An Act Making an Appropriation to Pay Compensation Claims of State Employees and Providing for the Method of Payment Thereof," approved June 30, 1941, and being by the terms of such Act, subject to the approval of the Governor, is hereby, if and when approval is given, made payable from the appropriation from the General Revenue Fund in the manner provided for in such Act.